PHILPOT CONSTRUCTION COMPANY *v.* DANAHER.

Opinion delivered January 27, 1930.

*Wooldridge & Wooldridge,* for appellant.

*A. F. Triplett,* for appellee.

SMITH, J. An improvement district was organized to pave and resurface a portion of Barraque Street in the city of Pine Bluff. It was believed by the property owners and the commissioners of the district that the portion of the street which they sought to improve would be made a part of one of the State's roads running through the city, and that if this were done a contribution on the part of the State Highway Commission would be made under the authority of act No. 184 of the Acts of 1927 (Acts 1927, p. 645), and it was determined to make the construction of the improvement contingent upon this contribution being made.

With this end in view, the chairman of the board of commissioners of the improvement district submitted the matter to the State Highway Commission, and, on July 20, 1928, the State Highway Engineer wrote the chairman of the board a letter, in which there was inclosed a copy of the resolutions adopted by the commission, defining the policy of the Highway Commission

under act 184. This act is entitled, "An act to provide for the permanent improvement of continuations of State highways within the corporate limits of cities of the first and second class." This act authorized State aid, to the extent of fifty per cent., of the cost of improvements which should be designated as extensions of State highways through cities of first and second class.

The resolutions of the Highway Commission referred to contained a preamble, which recited that act 184 was ambiguous, and contained no appropriation to meet the expenditures there authorized, and that, as many cities were seeking to take advantage of the provisions of the act, an amount of money so large would be required that the finances of the department would be embarrassed if these payments were made within a two-year period, and that the Highway Commission would advise the Legislature at its 1929 session why it had not complied with act 184. This resolution further recited that "The State Highway Commission will recommend amendments to act No. 184 or a substitute act that will carry out the purposes of act No. 184, but provide for the payment over a period of years by issuing certificates of indebtedness of the Highway Department to such district on completion of the work, so as to give the same relief as was intended under act No. 184 and at the same time not cripple the finances of the Highway Department at the very time when roads are most in need. Such certificates of indebtedness to bear 4½ per cent. interest, to be payable jointly to the district, and the trustee named in the bond issue of such town or city paving district, and to be non-negotiable, so as to prevent any district discounting same at higher interest rate."

In the letter from the State Highway Engineer to the chairman of the board of commissioners, transmitting a copy of these resolutions, the engineer stated: "You understand that it is not practical for us to desig-

nate a street as a highway prior to the issuance of your bonds, as the bond attorneys would refuse to approve your bonds. We will, however, designate this street after the bonds are sold and the money is in your hands.''

With this assurance, proper steps were taken to complete the organization of the improvement district, and betterments were assessed, against which bonds were issued in the sum of $17,500. These bonds were negotiated and sold under a contract, which constituted the Merchants' & Planters' Bank & Trust Company of Pine Bluff, as trustee, and gave the improvement district the right to repurchase all of the bonds in excess of the amount required to pay one-half of the cost of the improvement, and this option was exercised, and the trustee now holds for the benefit of all parties in interest the bonds so repurchased.

Competitive bids were invited under the circumstances stated, and the Philpot Construction Company, hereinafter referred to as the company, became the successful bidder, and the improvement was constructed under the contract let to it, and this suit was brought to enforce payment of the balance alleged to be due under this contract.

The cause was submitted to the court sitting as a jury, and a general finding of facts was made, upon which the court declared that there was no right to recover, and this appeal is from that judgment. This finding of facts was based largely upon an agreed statement of facts filed by the parties, and is fully supported by the testimony as to facts found, but not agreed upon.

After the completion of the work, the improvement district paid the company the amount which the district admitted was due, and there was received from the State Highway Commission a certificate for the balance, which was made payable in installments extending over the same period of time required for the maturity and payment of the bonds issued by the improvement district, the amount thereof being payable in equal annual in-

stallments, with interest on the deferred installments at 4½ per cent. per annum. The first installment was paid by a voucher drawn by the State Auditor, which the bank, as trustee, placed to the credit of the account of the company, whose commercial account was carried at this bank. When the company was advised of this action, it repudiated this payment on the ground that, having completed its contract, the balance due should be paid in cash out of the proceeds of the sale of the district's bonds, and it was insisted that the improvement district was required to accept the certificate of the Highway Commission and use the proceeds thereof, as the installments matured, in the payment of these bonds. There was written upon this certificate the indorsement that it was nonnegotiable and nontransferable.

The court found the facts to be that all parties were advised that the improvement district was unwilling to enter into any contract, obligating itself to pay more than approximately one-half the total construction cost of the improvement, and that it was not the intention of the parties, in entering into the contract, to place any obligation upon the district in excess of the difference between the total construction cost and the anticipated aid, and that the contractor had been paid the difference between the construction cost, as shown by the final estimate of the engineer of the district, and the amount of State aid, figured at the time of such final estimate, and agreed upon at such time, as the amount of State aid to be anticipated, according to the rules and regulations of the State Highway Commission.

This finding appears to be sustained by the express terms of the construction contract, from which we copy as follows: "It is understood and agreed between the parties hereto that said Paving District No. 101 is anticipating aid from the State Highway Department of the State of Arkansas under the provisions of act No. 184 of the General Assembly of 1927 and the act of the Special Session of 1928 amendatory of said act No. 184,

which aid, if given, will be in the form of certificates issued by the State Highway Department in an amount equal to approximately one-half of the cost at above prices of the improvement above required to be done on the portion of Barraque Street, which would lie between Walnut Street and Mulberry Street, and between the curb lines on the north and south sides of Barraque Street, if said curb lines should be extended straight through the entire district across the intersecting streets, such portion being parallelogram 32.5 feet in width, and extending from Walnut Street to Mulberry Street in length, which amount is hereby stated to be $7,790.42. These certificates, so expected to be issued by the State Highway Department, will hereinafter be called highway certificates. The expectation on the part of the district for such State aid is based solely upon a letter dated July 20, 1928, addressed to M. Danaher, chairman of said board of commissioners by C. S. Christian, State Highway Engineer, which letter has been read to the party of the first part.

"The commissioners are unwilling to enter into a contract for the making of the improvement embraced herein, unless they know that the total cost thereof to be paid by the district out of assessments to be collected from its property owners will not exceed the difference between the total construction cost of such improvement according to the proposal of the contractor accepted by the board and the face value of the highway certificates above referred to, which difference is hereby stated to be $7,475.96. The contractor is willing to, and hereby does, assume all risk of failure of the district to obtain such State aid, and agrees that, if such State aid be not given to the district, then the total amount to be paid to the contractor for all work done and materials furnished in making the improvement hereby contracted for shall be the difference between its worth, figured at the unit prices in the contractor's proposal, and said sum of $7,790.42, anticipated State aid.

932

"The contractor hereby agrees to construct the improvement completely, even if no aid be given to the district by the State Highway Department, at the net cost to the district set out above.

"If such State aid be given to the district in the sum now expected, or in a lesser sum, the commissioners may turn over to the said contractor the certificates of indebtedness issued to it by the said State Highway Commission, or may assign to the contractor all of its rights and interest in said certificates, or, if it prefers to do so, may pay the said contractor the amount of said aid in cash."

The act No. 8, here referred to, was passed at the Extraordinary Session of the General Assembly in 1928 (Acts Special Session 1928, page 31), and is entitled, "An act to amend act No. 184, approved March 22, 1927."

This act amends the defects which were thought to exist in act No. 184, and by § 5 of the act No. 8 it is provided that "Said commission shall determine the amount to be refunded to the (improvement) district, and the installments into which it shall be divided, and shall issue certificates of indebtedness for the respective installments, payable to the district, if the district has no outstanding bonds, or payable jointly to the district and to the trustee for the bondholder, if the district has outstanding bonds. The certificates shall be nonnegotiable, and shall so state on their face, and shall bear interest at the rate of four and one-half per cent. per annum, payable semi-annually."

It appears from the facts stated, that the improvement districts were required by the State Highway Commission to proceed as if no State aid were expected; indeed, the street could not be designated as a part of the State Highway system until it had been improved, in accordance with plans approved by the Highway Commission. It was in accordance with this requirement that the district issued bonds in an amount equal to the cost of the improvement, and the bonds were not

issued to provide a fund to pay the contractor anything more than one-half of the cost under any condition. It appears, therefore, that the extent of the interest of the contractor in the proceeds of the bond sale was to receive from this source one-half of the contract price of the cost of the improvement.

It appears from the agreed statement of facts that the "total payments to be made under the State Highway certificate, including interest, is the sum of $11,430.65. To provide the amount of the State certificate in cash, the defendant district would have to sell not less than $8,200 of five per cent. bonds, and such bonds matured in the same amount per year, as provided for the maturities of the State Highway certificate would total the sum of $12,555.47, including interest, or $1,124.82 more than the total principal and interest payments under the State Highway certificate bearing four and one-half per cent. interest."

We think the court below was fully warranted in finding that the payment of this sum of $1,124.82 was an obligation which the improvement district did not assume.

In regard to this certificate, the answer alleged: "And such district again hereby tenders such certificate to plaintiffs, offers to assign or transfer to the plaintiffs all of its right, title, interest and claim thereunder, or to leave said certificate in the said Merchants' & Planters' Bank & Trust Company to be collected for the use of plaintiffs, or to take such other steps as plaintiffs may desire to vest the legal title of such certificate, or the proceeds therefrom, in plaintiffs."

It is contended, in effect, that the contract should be construed to mean that the company was to do the work for half price in the event only that the State aid was not forthcoming, and that, while it was in fact given, yet, when given, it was in a form not available in the manner contemplated by the parties, and that, as the aid was received, the district should be required to pay

934

in money, as it cannot pay in the manner contemplated. We think this risk was not assumed by the district, but was, on the contrary, expressly imposed on the company, and that it was not the intention of the district to be liable for more than one-half the cost under any circumstance. The language of the contract is that the commissioners, contracting for and on behalf of the district, "are unwilling to enter into a contract for the making of the improvement, unless they know that the total cost thereof to be paid by the district out of assessments to be collected from its property owners will not exceed the difference" between the total construction cost and the anticipated State aid, and it has already been stated that, if the district were required to pay the entire cost of the improvement and take the highway certificate, a loss of $1,124.82 would be sustained, which would, of course, have to be repaid by the district out of assessments to be collected from the property owners in excess of the difference between the total construction cost and the anticipated aid, and it was expressly provided in the contract that this should not occur.

It is argued that the contract imposes the alternative obligation to either transfer the certificate or pay in cash, and that, as one alternative has become impossible, the other is obligatory; but such is not, in our opinion, the effect of the contract. The district does have the right to pay in cash, but this was at its option, and it has not elected to exercise the option. It could also pay by the use of the State aid in whatever form it might be received, and this it has elected to do. All parties were familiar with the resolutions of the State Highway Commission and the statute pursuant to which the resolutions were passed, and these were expressly taken into account in the construction contract, and the company must be held to have known that the State aid would not be payable in cash, but in a nonnegotiable certificate made payable to the joint order of the improvement district, and the trustee for the bondholders, and that such

certificate would be issued for such amounts of annual maturities as would be equivalent to approximately fifty per cent. of the annual bond maturities of the district, and that such certificate would bear interest at the rate of only 4½ per cent.

It is true the certificate, when issued, was not only nonnegotiable, as the statute provides it should be, but was also made nontransferable, but upon this subject the court declared the law as follows: "That it was not the intention of the board of commissioners to guarantee the form of the certificate or that the same should be negotiable or transferable; that the fact that as it is such certificate is marked on its face nontransferable is not due to any act, neglect or default on the part of such district, and that any loss occasioned thereby must be borne by the plaintiffs as one of the risks assumed by them in agreeing without qualification to accept such certificate, and that even if it should be conceded, which, however, is not necessary to a determination of this case, that the commissioners are now prohibited by law or regulation of the State Highway Department from transferring such certificate, this cannot affect the obligation of the district to the plaintiffs."

We do not inquire by what authority the State Highway Commission made the certificate nontransferable, or whether such authority exists. It suffices, so far as the district is concerned, to say that it was the State aid given, and if the Highway Commission has, in fact, exceeded its power in making the certificate nontransferable, that action would not enlarge the obligation assumed by the district. The contract required it to pay only one-half of the cost, if State aid had been entirely withheld.

The contract contained the provision that "payments will be made the contractor between the first and tenth days of each month, upon estimates rendered by the engineers for work done during the preceding month. Eighty-five per cent. of the amount of work done accord-

ing to such estimates will be paid at the time such estimates are approved, and the remaining fifteen per cent. will be retained by the board pending the faithful completion of the contract."

It is argued that this provision shows the intention of the parties to be that the contractor should be paid in cash upon completion of the contract, provided State aid was awarded. This appears, however, to be a stipulation found in contracts of this character, and we think it should be construed with reference to other provisions of the contract in regard to payments, and that, when so construed, it means only that the district obligated itself to pay as the work progressed, the stipulated eighty-five per cent. of the amount which it had agreed to pay at all. Certainly, this provision would not require the district to pay the entire cost of the improvement in view of the other provisions on the subject if no State aid had been received.

It is earnestly insisted that the contract, when construed as a whole, means that the company should be paid in cash, or its equivalent, if State aid was obtained; but we think that such was not its meaning. And it is also insisted that, if such is not the meaning of the contract, the last paragraph of the contract is void as being unilateral and without consideration. This is the paragraph which authorizes the commissioners to turn over to the company the certificate of the Highway Commission, or to pay in cash. Upon this question the trial court declared the law as follows: "Such provision is not void for lack of mutuality by reason of the option thereby conferred upon the commissioners, since the law does not require that every clause of a contract shall contain reciprocal obligations, and it is sufficient if there was a consideration for the promise, which consideration is plainly evident in this case in the award of the contract to the plaintiffs with the obligation imposed upon the paving district to pay plaintiffs the difference between the construction cost and anticipated State aid. The

wording of the contract to the effect that the commissioners may turn over or assign the certificate to the contractor is but another way of stating that the plaintiffs agree that this may be done."

We think the court was correct in this declaration, and that it is sustained by the following authorities cited in the brief of counsel for appellee:   6 R. C. L. 686-689; 13 C. J. 336; Williston on Contracts, 314-317.

Upon a consideration of the whole case, we are of the opinion that the judgment of the court below, dismissing the suit of the company against the district, is correct, and it is therefore affirmed.